IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Wallace B. Roderick Revocable Living Trust, )
Trustee Wallace B. Roderick, on behalf of )
itself and all others similarly situated, )
)
                Plaintiff, )
)
v. ) Case No. 08-CV-01330-JTM-KMH
)
XTO Energy, Inc. (including predecessors, )
successors, and affiliates), )
)
                Defendant. )
                                          )

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF RULE 56(f) MOTION**

      Defendant's motion for summary judgment (filed within six months of removal of this case) is a pre-discovery preemptive strike against Plaintiff's claims because Defendant fears that, if discovery is allowed, Plaintiff's royalty underpayment and non-payment claims will be certified as a class action and will then have to be settled as were *Booth* and *Burkett.* Plaintiff's Memorandum in Support (Doc. 81) enumerates differences among *Booth, Burkett,* and this case. Defendant does not even attempt to challenge Plaintiff's analysis, preferring instead to stay on the surface and repeat the mantra that "the cases are the same." But the cases are not the same and Plaintiff's complaints of inadequate representation will be borne out by discovery. Presently, however, lack of discovery prevents presentation of evidence showing the material size of unlitigated and unevaluated claims and the inadequate representation in *Booth.* Plaintiff replies briefly, recognizing that many of Defendant's arguments were anticipated by Plaintiff's Memorandum in Support (Doc. 81).

1

**I. Further Discovery Should be Allowed.**

Tacitly conceding that it possesses the information, Defendant claims Plaintiff did not say why discovery is needed.[1] That is not so; and, examples come easily to mind. The value of unlitigated claims that were not mentioned in the *Booth* notice to the class[2] and not evaluated by the court or plaintiff's settlement class counsel cannot be shown without evidence. Further, the great discrepancy between what was received in *Burkett* for deduction claims and what was received in *Booth* raises serious questions about adequacy and warrants requested discovery as to what was actually discovered and considered by plaintiffs' counsel in *Booth*. Likewise, as it is impossible to tell the basis for plaintiff's calculation of a value of even the litigated deduction claims in *Booth*, information is needed to assess adequacy of representation. The importance of a record is shown by Defendant's citation of *In re General American Life Ins. Co. Sales Prac. Lit.*, 357 F.3d 800 (8th Cir. 2004)— which reversed the burden of proof on adequacy of representation as announced by *Pelt* and, also inconsistent with *Pelt,* treated "adequacy" separately from *res judicata* instead of as part of the "privity" requirement. The Eighth Circuit noted the absence of a full record: "[w]e do not know the relative value of the modal-billing claims, and we have no way to criticize the judgment of the class representative." *Id.* at 805. Here, absent discovery, evidence is lacking about whether there was proper evaluation by plaintiff's settlement counsel of the value of the litigated deduction claims and no evidence about the value of the unlitigated and undisclosed claims regarding affiliate sales, NGLs, and other gas constituents. Because the discovery issues are before the Court by virtue of Plaintiff's Rule 56(f) Motion, Plaintiff will be

---

[1] Of course, Defendant completely ignores the Gunderson Affidavit (Doc. 82).
[2] Defendant's Response (Doc. 86) does not attempt to defend this due process violation that is itself sufficient to require denial of Defendant's motion. *See* Doc.81 at 6-7.

filing in further support a Motion to Compel, Brief and Supporting Exhibits, which are incorporated by this reference, and will describe the background and magnitude of some of the unlitigated claims in *Booth*, as well as some of related necessary discovery here.

II. **Defendant's Contention That Constitutional Requirement of Adequate Representation at All Times May Be Satisfied By Submission of the "Complaint/Petition, Settlement Agreements, Notices and Final Judgment"[3] is Contrary to Law.**

Defendant's proposition that "adequate representation" can be shown by a few court documents is at odds with the governing authorities: *Pelt* and *Shutts*.[4] Defendant attempts to escape those holdings by transparently limiting *Pelt,* ignoring *Shutts* (except for a specious argument dispatched below), and asserting an overly broad reading of a pre-*Shutts* decision. Given *Pelt* and *Shutts* and the long established rule that a class action court cannot determine the *res judicata* effect of its own judgment, *Pelt's* requirement of a hindsight review is common sense. *See* Doc. 81 at 4-10. If collateral attack was available only for whether the final settlement judgment recited "magic words" and whether the settlement release was broad enough, then any later review would be meaningless. If the "preclusive effect of a prior judgment …depend[s] upon whether absent members were 'in fact' adequately represented by parties who are present" (*Pelt* at 1283-4), then a more meaningful review than proposed by Defendant must be available.

Recognizing that it cannot legitimately escape *Shutts,* Defendant absurdly argues that adequate representation applies only to "absent class members", but not to those who receive a notice and an opportunity to opt out because, according to Defendant, those class members "were not absent." Def. Opp. at 11. "Absent class members" are those

---

[3] *See, e.g.* Def. Opp. (Doc. 86) at 4.
[4] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).

class members who have not become parties, *i.e.,* anyone not a named plaintiff, intervener, defendant, or third-party defendant. Had the rule been otherwise, *Shutts* would have said that due process required only adequate notice with an opportunity to opt out. But, it holds that adequate representation is also required. *Shutts,* 472 U.S. at 811-12; Doc. 81 at 6-7.

Defendant also contends that *In re Four Seasons Securities Laws Litigation,* 502 F.2d 834, 843 (10th Cir. 1974), a pre-*Shutts* decision describing itself as involving "a unique factual situation", stands for a general rule that notice and opportunity to opt out excuse lack of adequate representation. First, *Shutts'* recognition of adequate representation as a separate and independent due process requirement abolished any such general rule. Second, Defendant's argument has been tried, and rejected before:

> We therefore reject defendants' assertion that notice and the opportunity to opt-out, without adequate representation, satisfies due process requirements. Notice is no substitute for extensive document examination, depositions of adverse witnesses, securing expert advise on complicated issues, and aggressive negotiation at arms-length. The same holds true for opt out rights, which are infrequently utilized and usually economically impracticable. Due process requires notice, the opportunity to be heard and to participate in the litigation, the right to opt out, *and* adequate representation before an absent class member can be bound by a settlement in a class action predominately for money damages. *Shutts,* 472 U.S. at 812, 105 S.Ct. at 2974-57. [FN6]
>
> [FN6] We find unpersuasive defendant's reliance on *In re Four Seasons Securities Laws Litigation,* 10th Cir, 502 F.2d 834…and other pre-*Shutts* cases… Such holdings have been criticized by commentators…are inconsistent with other pre-*Shutts* cases cited herein, and do not survive *Shutts.*

*Prezzant v. De Angelis,* 636 A.2d 915, 924 & n.6 (emphasis in original). Moreover, Defendant admits that "[d]ue process entitles class members to notice **and to adequate representation…** *Id.*".[5] (Doc. 86 at 12 citing *Pelt*)(emphasis added).

---

[5] Defendant's quote is from p. 1289 of *Pelt.*

4

Third, *Four Seasons* is a limited decision borne of a "unique factual situation". *Four Seasons,* 502 F.2d at 842. *Four Seasons* emphasizes that the State of Ohio, the objector, was well aware of the pending class action, had a $4,000,000 claim it had pursued in at least 3 separate lawsuits and a bankruptcy, had "participated in one or more of the discussions" about class action settlement, had a copy of the full settlement agreement that made obvious the very objections it was raising, and waived its right to appeal from the judgment in the class action settlement. *Id.* at 835-9 & n. 5. The settlement included terms preserving defendant's defenses to Ohio's claims because everyone expected Ohio would opt out. *Id.* at 841. Further, the *Four Seasons* Court noted that it was not confronted with a situation, like the instant case, where claimants had "no litigable claims unless aggregated and that for those so situated the option to join in or opt out is in reality no option at all. They must accept either nothing at all or a possibly unfair settlement… No such mitigating circumstances are present here." *Id.* at 844 n. 10. In short, *Four Seasons* is a limited decision based on the unique circumstances of a sophisticated governmental entity with a claim so large that it had been represented by counsel in numerous cases and a bankruptcy and was well aware of all pertinent facts, including the settlement terms of the class action to which it was objecting.[6]

Finally, none of Defendant's attempts to distinguish or limit *Pelt* are persuasive. *Pelt* laid out the general rules governing class actions and the burden of proof on claim preclusion in the class action context. *Pelt's* mention of the *Wal-mart* decision as being inapplicable was not a pronouncement, as Defendant asserts, that any settlement is permissible provided there was notice and an opportunity to opt out. Instead, the Court

---

[6] There was no suggestion that the class as a whole, as opposed to Ohio, had not been well represented.

merely distinguished settlements from non-prosecution dismissals and, before doing so, stated: "Utah is correct that in the context of settlement, abandonment of claims can be a reasonable litigation tactic that **does not necessarily support a finding of inadequate representation** [noting that Utah cited *Wal-mart*]". *Id.* at 1288 (emphasis added). That language is hardly an endorsement of Defendant's positions. Instead, what it says is that abandonment of claims might or might not support a finding of inadequate representation, depending on the facts. Those facts are what Plaintiff wants to discover.[7]

### III.  Defendant's Curious Abstention Argument is Wrong.

Defendant maintains that any challenge to a prior class action settlement must be directed only to the court that approved settlement and retained jurisdiction. Doc. 86 at 10-11. That argument requires denial of Defendant's summary judgment because this court would not reach the issue. Defendant describes the only arguably relevant cases it cites for this argument as dismissing without prejudice or abstaining. *Id.*[8] Unless Defendant tacitly recognizes that after discovery its motion will be denied, Plaintiff is at a loss to explain why Defendant advances an argument that would require denial of its motion.

---

[7] Defendant's erroneous contention that all claims in a gas royalty lawsuit arise from the Identical Factual Predicate because they would arise from the same leases was anticipated and rebutted in Doc. 81 at 10-11.

[8] Two cases cited by Defendant –*Morris v. City of Hobart,* 39 F.3d 1105 (10th Cir. 1994) and *Kokoken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) have nothing whatsoever to do with whether a federal court should abstain in favor of a state court. They announce or follow the rule that a federal court cannot enforce a settlement that it approved absent either an independent basis of subject matter jurisdiction or retention of jurisdiction in its judgment. *Magnolia v. Conn. G*en. *Life Ins. Co.,* 157 F.Supp.2d 583 (D. Md. 2001) dealt not with any issue regarding a state court, but rather, with a coordinate federal court. Additionally, none of the cases cited by Defendant involved the Class Action Fairness Act, the statute under which Defendant removed to this Court.

Nevertheless, Defendant's abstention argument is wrong. First, by removing the case to this Court (and also filing several motions here), Defendant consented to this Court's jurisdiction and waived (or is estopped) from contending that such jurisdiction should not be exercised. *See, e.g., In re Moore,* 209 U.S. 490, 496 (1908) *overruled in part as to unrelated procedural grounds by Ex parte Harding,* 219 U.S. 363 (1911) ("That the defendant consented to accept the jurisdiction of the United States court is obvious. It filed a petition for removal from the state to the United States court. No clearer expression of its acceptance of the jurisdiction of the latter court could be had.") Even parties who did not remove waive complaints about the exercise of jurisdiction by filing motions or otherwise proceeding to invoke the court's jurisdiction. *See, e.g., Id.* (plaintiff consented to jurisdiction by "mere filing of an amended complaint"); *Koehnen v. Herald Fire Ins. Co.*, 89 F.3d 525 (8th Cir. 1993) (waiver of right to remand by actions in federal court).

Here, Defendant does not question the *existence* of federal jurisdiction; instead, it asserts that existing jurisdiction should be declined. That issue has been waived.[9] It is settled that by proceeding in federal court, as Defendant has done, waives arguments that the court should abstain. *See, e.g., Orvis v Grove City,* 2006 WL 1924203 *2 (10th Cir. Utah)); *Morrow v. Winslow*, 94 F.3d 1386, 1390-91 (10th Cir. 1996)(waiver found; when litigant has "voluntarily submitted to a federal forum ... the principles of comity underlying the *Younger* abstention doctrine do not demand that the federal court force the case back into the State's own system."). Second, Defendant ignores the Congressional intent that class actions with minimal diversity and properly shown to exceed $5,000,000

---

[9] The Defendant does not argue that this Court lacks subject matter jurisdiction, an issue that cannot be waived. Instead, it argues that this Court has subject matter jurisdiction that it should decline to exercise.

7

are to be litigated in federal court. Congress passed the Class Action Fairness Act, under which Defendant removed, because of dissatisfaction with state court handling of qualifying class actions: "One key reason for these problems is that most class actions are currently adjudicated in state courts, where the governing rules are applied inconsistently (frequently in a manner that contravenes basic fairness and due process considerations) and where there is often inadequate supervision over litigation procedures and proposed settlements." S.REP.109-14,P.L. 109-2, The Class Action Fairness Act of 2005, Senate Rept. No 109-14 at 6, (Feb. 28, 2005). To effectuate its purpose, Congress specifically set out situations in which a federal court could or must decline jurisdiction of a qualifying class action. *See* 28 U.S.C. §1332(d)(4)("A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction"); 28 U.S.C. §1332(d)(4)("A district court shall decline to exercise jurisdiction"). Defendant does not suggest that either exception applies.[10]

Not surprisingly the cases cited by Defendant were decided before CAFA. Here, especially in the face of a Congressional intent not to so defer, there is no reason to defer to a state court, especially where challenges to prior settlement are governed by due process law under the United States Constitution—issues over which a state court would lack special expertise and this court is a more appropriate forum. Finally, any retention of jurisdiction by a state court cannot affect proceedings in federal court. *Donavan v. City of Dallas,* 377 U.S. 408, 413-414 (1964)(there is a right to proceed in federal court in an

---

[10] Instead, when Defendant sought jurisdiction in this Court, it represented that "CAFA's provisions 'should be read broadly, with a strong preference that interstate class actions should be heard in a federal court ..." S.Rep. No. 109-1 4, at 43 (Feb. 28, 2005)'". Doc. 1 at 3.

*in personam* action over which subject matter jurisdiction exists and "[state] courts were without power to take away this federal right by contempt proceedings or otherwise.")

**IV.     Defendant's Release Defense Requires It To Establish Due Process.**

Citing two non-class actions, Defendant contends that only the settlement agreement need be considered in order to determine the release defense. Doc. 86 at 12. That argument was rebutted in Doc. 81 at 9-10, and in *Epstein v. MCA,* 50 F.3d 644 (9th Cir.1995), *reversed on other grounds but holding cited not reviewed and not disturbed by Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367 (1996), which held:

> [Defendant's] attempt to equate class settlements with the settlement of traditional litigation by individual parties falls short….the settlement of a class action is fundamentally different from the settlement of traditional litigation….that the class members have a right to opt out does not diminish the extent to which a class action settlement is an exercise of judicial power. **Regardless of whether class members are given opt-out rights, the court is still required to ensure that representation is adequate and that the settlement is fair to class members.** The settlement of the class action is not an act of judicial mediation; it is an act of judicial power.  Second, the "consent" purportedly given by class members in deciding *not* to opt out is hardly comparable to the consent given by individual plaintiffs in deciding to settle their own traditional lawsuits. because opt-out rights are…'infrequently utilized and usually economically impracticable, we would be blind to reality to think that any consent implied by class members deciding not to opt out is comparable to the consent given by individual plaintiffs in settling their own lawsuits."

*Id.* at 666-67 (citations omitted and bolding added).

**V.     *Booth* Did Not Raise Affiliate Pricing Issues, Did Not Disclose Unlitigated Claims in the Class Notice Or Evaluate the Value of Those Claims.**

Defendant mis-characterizes Plaintiff's Memorandum (Doc. 81) when it knows that certain claims were not litigated in *Booth*. Plaintiff's Memo.at pp. 17-18 states that affiliate sales were taking place in Oklahoma during the time period covered by *Booth*,

not that such claims were litigated in *Booth.* They were not.[11] Likewise, Plaintiff notes that claims regarding NGLs and other gas constituents were not litigated in *Booth.* As Plaintiff noted in his brief at p.17, n. 10, the Petition in *Booth* asserted no claims regarding NGLs or other constituents of the gas stream. Of the four types of documents that Defendant claims are pertinent (Doc. 86 at 4) only the "complaint/petition" would set forth claims asserted in the case. The fact that plaintiffs counsel in *Booth* may have been aware of such claims (given their mention in a brief filed by Defendant) does not explain why such claims were not pled or assessed, why they were released without being valued or explained to the settlement court , or why they were released without notice to the class. If anything, such possible knowledge by *Booth's* plaintiffs' counsel underscores the need for discovery about the adequacy of the representation in *Booth.*[12]

## VI. CONCLUSION

The Court should grant Plaintiff's motion and permit requested discovery.

---

[11] The deposition transcript attached to and referenced in Defendant's Brief (Doc. 86 at 14) has nothing to do with *Booth.* Royalty-owners in *Beer v. XTO Energy, Inc.*, 2009 WL 764500 (W.D.Okla., March 20, 2009) are seeking relief solely based upon Defendant's affiliate "pricing" practices. *Id.*, 2007 WL 764500 at *2. That is so despite *Beer* involving only wells connected to the Timberland gathering system in only *four counties* in Kansas and Oklahoma and only for 3 ½ years (July 1, 2002 to 2006). Plaintiffs in the *Beer* Case "seek damages of $27,124,500.22" just for affiliate "pricing" claims, *Id.*, 2007 WL 764500 at *1, suggesting that *Booth* failed miserably to evaluate any "pricing" claims. Defendant has refused to supply affiliate to third party sales information (and other pertinent affiliate information) of the type that was obviously used to calculate "pricing" damages and establish uniform affiliate sales practices in *Beer.*

[12] As Plaintiff noted in its Motion, due process requires "the notice fairly describe the material facts about the litigation and proposed settlement, including its effect on any claims or rights of class members. *See, e.g., Twigg v. Sears, Roebuck & Co.,* 153 F.3d 1222, 1227-8 (11th Cir. 1998)", and "Of the pertinent factors, the most important is balancing what the class receives against what the class gives up. *See, e.g., 4 Newberg on Class Actions*, § 13:68 (4th ed.) ("The most important factor in evaluating the fairness of a class action settlement is the comparison of the terms of compromise with the likely results of litigation")."

Respectfully submitted,

/s/ Rex A. Sharp
Rex A. Sharp #12350
Barbara C. Frankland #14198
Gunderson, Sharp & Walke, L.L.P.
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0500
(913) 901-0419 fax
rsharp@midwest-law.com
bfrankland@midwest-law.com

Joseph Gunderson (admitted *pro hac vice*)
Gunderson Sharp & Walke, LLP
317 Sixth Avenue, Ste. 600
Des Moines, IA 50309
(515) 288-0219
(515) 288-0328 fax
jgunderson@midwest-law.com

David E. Sharp KBA#10624
Gunderson Sharp & Walke, LLP
700 Louisiana, Suite 2300
Houston, TX 77002
(713) 221-2337
(713) 583-5448 fax
dsharp@midwest-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 22, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following: doug@crottylaw.kscoxmail.com and mbanner@hallestill.

/s/ Rex A. Sharp