IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WALLACE B. RODERICK REVOCABLE LIVING
TRUST, TRUSTEE WALLACE B. RODERICK,
ON BEHALF OF ITSELF AND ALL OTHERS
SIMILARLY SITUATED,

        Plaintiff,

        vs.         Case No. 08-1330-JTM

XTO ENERGY, INC.,

        Defendant.

MEMORANDUM AND ORDER

This matter is before the court on Motion to Transfer of Plaintiff Wallace B. Roderick Revocable Living Trust, Trustee Wallace B. Roderick. Roderick seeks to transfer that portion of the proposed class which includes owners of royalty owners of Oklahoma wells to the Eastern District of Oklahoma, where they might be joined with a recently-filed Oklahoma action. In the alternative, Roderick seeks to modify the proposed class herein, excluding and dismissing the Oklahoma royalty claims. Defendant XTO opposes the motion.

*Facts*

With a single exception, neither party has challenged the facts presented by its opponent. Those facts establish that, on September 18, 2008, plaintiff filed the present action against defendant

XTO in the District Court of Kearny County, Kansas. On October 24, 2008, XTO removed the action to the Kansas District Court.

On March 10, 2009, Roderick filed his First Amended Class Action Complaint. (Dkt. 37). The Amended Complaint asserts claims for breach of contract and unjust enrichment and seeks an accounting on behalf of the following putative class:

> All royalty owners of XTO Energy, Inc. (and its predecessors and successors) from wells located in Kansas, Colorado or Oklahoma that have produced gas and/or gas constituents (such as residue gas or methane, natural gas liquids, helium, nitrogen or condensate) from January 1, 1999 to the present.
>
> Excluded from the Class are: (1) the Mineral Management Service (Indian tribes and the United States); and (2) Defendant, its affiliates, predecessors, and employees, officers and directors.

(Dkt. 37, ¶¶ 10, 56-66).

In response to the Amended Complaint, on March 24, 2009, XTO filed a Motion for Partial Dismissal of Plaintiff's claims that also fell within the claims advanced in a certified class action currently before the United States District Court for the Western District of Oklahoma, *Beer, et al. v. XTO Energy Inc.*, Case No. CIV-07-798-L (now *Frankhouser et al. v. XTO Energy*).

On April 21, 2009, Roderick filed a Memorandum in Opposition to Defendant's Partial Motion to Dismiss (First to File Rule), arguing that the Oklahoma claims at issue in *Beer* should not be dismissed in this action. On January 12, 2010, the Court, applying the first-to-file rule, dismissed the claims that were at issue in the *Beer* (now *Frankhouser*) case. (Dkt. 110).

On April 14, 2010, Roderick filed a Motion to Reconsider a Portion of the court's January 12, 2010 Order, arguing that due to the decertification of the class in *Beer*, the Court should reconsider and alter its ruling that dismissed the Oklahoma claims that were the same as the ones at issue in *Beer*. The motion was later withdrawn

On November 15, 2010, Plaintiff filed a Motion for Class Certification and Memorandum in Support, seeking to certify the following class:

> All royalty owners of XTO Energy, Inc. (and its affiliated predecessors and successors) from wells located in Kansas and Oklahoma that have produced gas and/or gas constituents (such as residue gas or methane, natural gas liquids, helium, nitrogen or condensate) from January 1, 1999 to the present.
>
> Excluded from the Class are: (1) the Mineral Management Service (Indian tribes and the United States); (2) Defendant, its affiliates, predecessors, and employees, officers and directors; (3) Any NYSE or NASDAQ listed company (and its subsidiaries) engaged in oil and gas exploration, gathering, processing, or marketing; (4) the claims of royalty owners as to Kansas and Oklahoma wells gathered by Timberland and processed at the Tyrone Plant, such claims having been dismissed by this Court based upon the certified class in *Beer, et al. v. XTO Energy, Inc.*, Case No. CIV-07-798-L, U.S. Dist. Ct., Western District of Oklahoma (Doc. 110); and (5) the claims of royalty owners as to Oklahoma wells covered by the settlement in *Booth v. Cross Timbers Oil Co.*, Case No. CJ-98- 016, District Court for Dewey County, State of Oklahoma, having been dismissed by this Court based upon its granting summary judgment. (Doc. 110).

(Dkt. 149).

On December 17, 2010, Chieftain Royalty Company instituted an action against XTO in the District Court of Coal County, Oklahoma. On January 21, 2011, XTO removed the action to the Eastern District of Oklahoma and it is now styled *Chieftain Royalty Company v. XTO Energy, Inc.*, Case No. CIV-11-29-FHS, in the United States District Court for the Eastern District of Oklahoma. The *Chieftain* Petition asserts claims for breach of contract, tortious breach of contract, breach of fiduciary or quasi-fiduciary duty, fraud (actual and constructive) and deceit, conversion and conspiracy and seeks an accounting, an injunction and punitive damages. The proposed class in *Chieftain* comprises:

> All non-excluded persons or entities who are or were royalty owners in Oklahoma wells where XTO, including predecessors or affiliates, is or was the operator (or, as a non-operator, XTO separately marketed gas). The Class Claims relate only to payment for gas and its constituents (helium, residue gas, natural gas liquids,

3

nitrogen and condensate) produced from the wells. The Class does not include overriding royalty owners or other owners who derive their interest through the oil and gas lessee.

The persons or entities excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America and the State of Oklahoma; (2) publicly traded oil and gas exploration companies and their affiliates; (3) the claims of royalty owners in XTO wells gathered by Timberland and processed at the Tyrone Plant which are presently the subject of the action styled *Frankhouser, et al v. XTO Energy, Inc*., Case No. CIV-07-798-L USDC WD OK (formerly *Beer et al v. XTO*); (4) the claims of royalty owners to the extent previously released by settlement in the case styled *Booth v. Cross Timbers Oil Co.*, Case No. CJ-98-016, District Court for Dewey County, OK; and (5) persons or entities that Plaintiffs' counsel is, or may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional conduct.

(Dkt. 158, Plaintiff. Exh. B).

On January 28, 2011, XTO filed a Motion to Dismiss the *Chieftain* action based on the first-to-file rule. On April 29, 2011, the Judge Seay in held XTO's Motion to Dismiss pending this court's resolution of the transfer motion.

Roderick filed this Motion on February 18, 2011, seeking to sever the Oklahoma claims and transfer them to the *Chieftain* action, or, in the alternative, to narrow the class definition to exclude the Oklahoma claims.

*Chieftain* has an Oklahoma class representative for the Oklahoma class, and *Roderick* does not. *Chieftain* alleges tort claims to recover punitive damages, and *Roderick* does not. *Chieftain* asserts legal causes of action that allow recovery of attorneys' fees for the Oklahoma Class, and *Roderick* does not.

XTO operates approximately 450 gas wells in Kansas with aggregate volume of approximately 81MMcf over the entire Class Period. Kansas wells are part of the Roderick Class because 67 Kansas wells encompassed in the Frankhouser class are excluded.

4

XTO operates approximately 1,073 gas wells in Oklahoma with aggregate yearly volume of approximately 50 MMcf in a single year (2009) within the Class Period. Oklahoma wells are part of the *Roderick* Class because 161 Oklahoma wells encompassed in the *Frankhouser* class are excluded.

Apart from the Timberland gathering system addressed in *Frankhouser*, XTO (and its affiliates) operate three other gathering systems in Oklahoma, namely, the Ringwood Gathering System, the Quinlan Gathering System (Woodward County, Oklahoma), and the Elk City Gathering System. XTO actually owns and operates the Quinlan Gathering System and the Elk City Gathering System. An XTO affiliate, Ringwood Gathering Company, owns and operates the Ringwood Gathering System. XTO owns no gathering lines in Kansas.

XTO does not have an office in Kansas, but XTO's production operations are headed up in the Oklahoma City office by Senior Vice President Doug Schultze.

A separate XTO staff is maintained at the Ringwood offices in Ringwood, Oklahoma. Ringwood has no offices outside of Oklahoma. Kent Thomas is the foreman of Ringwood Gathering Company, and he is in charge of field operations. Gary Morrison, was in charge of field operations at Ringwood before Thomas, and he left sometimes in the early 2000's. Ringwood Gathering Company delivers the gas to the Ringwood plant, which is owned by an unrelated company, Mustang Gas Products, LLC.

XTO processes all of the gas it produces from Oklahoma wells at a processing plant in Oklahoma.

The single exception to the general lack of factual controversy is the characterization of the named plaintiff's agreement with the present motion. In its summary of the case, XTO argues in its

Response that Roderick "disavowed making the decision to request transfer of the Oklahoma claims" in his recent deposition. (Dkt. 160, at 2). This overstates the case, however, suggesting as it does that the named plaintiff disagrees with the decision. In fact, Roderick (a non-lawyer) merely indicated that he did not *initiate* the decision to seek transfer or dismissal of the Oklahoma claims, but that he accepted the advice of counsel on the subject, stating it "was fine with me if it was fine with the counsel." (Dep. at 43-44).

*Severance and Transfer*

The parties agree that the court cannot transfer part of an action. *Chrysler Credit v. Country Chrysler*, 928 F.2d 1509, 1518 (10th Cir. 1991). Instead, the court must first sever that part of the action which is to be transferred. This court summarized the rules relating to severance in *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. All General Lines Ins.*, LLC, 2010 WL 4683583 (D. Kan. Nov. 10, 2010).

> Fed.R.Civ.P. 21 gives district courts discretion to sever any claim against a party and proceed with the claim or claims separately. The court can sever unrelated claims and afford them separate treatment when to do so would be in the interest of some of the parties, would serve the interests of justice, and would further the prompt and efficient disposition of litigation. The court weighs the potential prejudice to the movant if severance is denied against the potential prejudice to the nonmovant if severance is granted. When determining whether severance is appropriate under Rule 21, the court considers the convenience of the parties, avoiding prejudice, promoting expedition and economy, and the separability of law and logic. A logical relationship exists if there is some nucleus of operative facts or law. Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum. Severance and transfer are only appropriate on rare occasions.

*Id*. at *6 (internal quotations and citations omitted). The court enjoys broad discretion in deciding whether to grant or deny severance. *Brunet v. United Gas Pipeline*, 15 F.3d 500 (5th Cir. 1994).

6

XTO argues that severance cannot be granted, as the Kansas and Oklahoma claims involve common questions of law and fact. In addition, it cites additional prudential considerations: that it will increase its costs in defending against these claims (since it will have to defend both this action and the new action in Oklahoma), will generate delay, may generate rulings contrary to that of this court. (Dkt. 160, at 9-10).

XTO cites *DZ Bank* for the proposition that severance is not permissible if there are "common questions of law and fact." 2010 WL 6483583 at *6. While this language appears in the cited opinion, the court did not hold that the existence of commonality is fatal to any request for severance. Indeed, the decision suggests otherwise, as the court clearly considered the issue of commonality as *one element* of its analysis in concluding that severance and transfer were not justified under the facts of the case.

XTO also quotes *Tab Exp. Intern. v. Aviation Sim. Tech.*, 215 F.R.D. 621 (D. Kan. 2003) for a similar proposition: "Only when claims are based 'on an entirely different factual situation from that underlying the plaintiff's claim, they are readily severable.'" (Dkt. 160, at 10). This citation, with its implication that severance can be granted "only" in the absence of commonality, is misleading. Without the truncation supplied by XTO, Judge Murgia wrote in this portion of the opinion:

> The final *factor* in determining whether severance is appropriate is the severability of law and logic. While the court will not sever claims where the issues are "inextricably intertwined with the remainder of the action," *Old Colony* [*Ventures I v. SMWNPF Holdings*], 918 F.Supp. [343,] 350 [(D. Kan. 1996)], when counterclaims are based on an entirely different factual situation from that underlying the plaintiff's claim, they are *readily* severable. *T.S.I. 27, Inc. v. Berman Enter. Inc.*, 115 F.R.D. 252, 254 (S.D.N.Y.1987) (citations omitted).

7

215 F.R.D. at 624 (emphasis added). The court here simply recognized that spectrum of multiple claim cases which run from those in which the claims are "inextricably intertwined," and those in which the claims are "entirely different." In the former case, no severance is allowed; in the latter, severance is "readily" granted. Further, this consideration is again explicitly a "factor" for the court to consider rather than a prerequisite.

> That this is so is reflected in the court's previous discussion of the rules relating to severance:
>
> Rule 21 applies when the claims asserted do not arise out of the same transaction or occurrence *or* do not present some common question of law or fact. *See Am. Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.*, 407 F.Supp. 164, 190 (D.Vi.1975). Under Rule 21, the court can *also* sever unrelated claims and afford them separate treatment when to do so would be in the interest of some of the parties. *Id.* This broad power stems from the last sentence of Rule 21, which clearly authorizes the court to sever the claims and proceed with them separately.

*Id.* at 623 (emphasis added). That is, severance can be granted if it is interest of justice and the claims arise from separate events or transactions, even if they do otherwise present common questions of law or fact.

Reviewing all of the circumstances of the case, the court finds that the interest of justice support severance of the Oklahoma claims and a transfer of those claims to Oklahoma.

The parties dispute whether a change of circumstances has arisen justifying a transfer. Generally, to prevail on a motion for transfer, "plaintiff must also show that the circumstances have changed since the filing of suit." *Leiker v. Jarvis Products Corp.*, 1990 WL 112974, at *1 (D. Kan. July 10, 1990) (citations omitted). Roderick argues that the change in circumstances is the recent filing and subsequent removal to federal court of the action in *Chieftain.* XTO argues that it is not true that there was no pending Oklahoma action at the time he filed his claim in Kansas. It contends that circumstances have not actually changed, as at the time plaintiff filed this action in Kansas,

8

there was another existing Oklahoma class action raising similar claims, *Beer, et al. v. XTO Energy Inc.*, Case No. CIV-07-798-L [now *Frankhouser et al. v. XTO Energy Inc.*]. The plaintiff's positions, XTO argues, "are as firmly set as the shfiting sands."

The *Beer* action, however, did not originally advance claims for NGL deductions, and was recently but provisionally decertified on that issue. The plaintiff credibly argues that it has consistently sought to maximize recovery for the potential class of Oklahoma royalty owners — pressing the currently action in priority over the narrower *Beer* action, but agreeing to transfer the case in light of the broader *Chieftain*.

The potential recovery to the class of Oklahoma royalty owners is much broader if they may advance their claims in the *Chieftain* action, which includes claims not presented here — tortious breach of contract, breach of fiduciary or quasi-fiduciary duty, fraud, conversion, and conspiracy. The present action presents claims for breach of contract, unjust enrichment and accounting. The additional, tort-based claims advanced in *Chieftain* would permit an award of punitive damages under Oklahoma law. *Weber v. Mobil Oil Corp.* 210 Ok. 33, 243 P.3d 1 (2010). Givent the recent developments in Oklahoma law and the filing of the *Chieftain* action, the court finds that a change of cirumstances exists.

Plaintiff argues that transfer is justified under § 1404(a) and *forum non conveniens*; defendant argues that neither is appropriate. Generally, similar considerations apply to both doctrines but "[c]ourts ... enjoy greater discretion to transfer a case pursuant to § 1404(a) than to dismiss the action based upon *forum non conveniens*." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir.1991).

Roderick argues that transfer pursuant to *forum non conveniens* is supported by a variety of factors. First, citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), he emphasizes the principle that "Plaintiff gets to choose his forum" and that "Plaintiff's choice of forum now is Oklahoma, not Kansas." (Dkt. 158, at 7). He emphasizes that *Chieftain* is "the more comprehensive case" and would allow greater recovery to the Oklahoma royalty owners. (Id. at 8). He argues that the Oklahoma cases involve Oklahoma law, and should be decided by Oklahoma courts and the facts should be resolved by Oklahoma jurors. (*Id*. at 8-9). He also argues that proceeding in Oklahoma would allow state-wide service of process on potential witnesses. See Fed. R. Civ. P. 45(b)(2)(C); Okla. Stat. §§ 12-2004.1.A.2; .3. He argues that proceedings in Oklahoma would be less expensive, as travel between Texas (where the defendant's offices are located) and Oklahoma would be less expensive that between Texas and Kansas. (Id. at 10 n. 4, noting number of airline flights). Plaintiff also cites these factors as supporting a transfer pursuant to § 1404(a). (Dkt. 158, at 12-15).

In its opposition, XTO argues that transfer would be inappropriate, as it would force it to defend two actions (or potentially three, if the transferred cases are not consolidated in Oklahoma). It argues that transfer will cause substantial delay, as the present action has been pending for over two years. Further, it stresses that the Oklahoma court would be free to revisit prior rulings of this court. Finally, it argues that as a practical matter the court cannot transfer the case as Roderick is a resident of Colorado, and thus could not serve as a representative to the transferred Oklahoma claims.

Courts generally give great deference to "plaintiff's *initial* choice of venue," *Lieker v. Jarvis Products Corp.*, 1990 WL 112974, at *2 (D. Kan. July 10, 1990) (emphasis added), not simply to the plaintiff's shifting tactical sense of the venue currently offering the largest recovery. In addition,

10

the deference accorded a plaintiff's selection is also given less deference where the plaintiff resides outside the forum. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2nd Cir. 2000). Roderick resides in Colorado, outside of either Kansas (the forum he initially chose) or Oklahoma (the forum he now seeks).

However, while the plaintiff's choice of forum is entitled to little importance here, the court finds that on balance the plaintiff has met his burden to show that severance and transfer is appropriate. The court notes that plaintiff's citation to the advantage of state-wide service of process reliance on the reduced expense of travel to and from trial in Tulsa in his original motion (Dkt. 158, at 10, 11, 13-14) was entirely predicated upon an apparent mistaken understanding of the location of the *Chieftain* action. That case is pending not in the Northern District of Oklahoma, but the Eastern District, and any trial will be conducted in Muskogee, Oklahoma.

However, the balance of the remaining factors support transfer. The facts demonstrate that the bulk of the action revolves around claims relating to Oklahoma wells. Further, the courts have a valid interest in having Oklahoma courts decide Oklahoma controversies. Further, Oklahoma venue would permit state-wide service of process, ensuring that all witnesses residing in Oklahoma would be available for testimony

XTO's argument based the supposed additional costs created by a transfer is unconvincing, as the *Chieftain* action will proceed regardless of the court's decision here. XTO will have to defend the claims advanced here and in *Chieftain*, and the court discerns no real prejudice from substantially increased costs of defending the inevitable parallel actions.

Further, XTO's arguments relating to judicial economy are of limited weight. While the parties have addressed some time and effort in the prior rulings of this court, these rulings would

remain in effect for the remainder of the case which is not transferred. Further, the effort advanced by the parties in preparing briefs and conducting discovery has not been wasted, as that work product will be available for use in Oklahoma as well. Further, discovery in the present action has been limited to the issue of certification. And while the present case is more advanced than the *Chieftain* action, the argument of delay is not decisive, given XTO's argument at the hearing that the Oklahoma action should be transferred here. If such transfer were to occur, the resolution of the present action would have to be delayed while additional discovery is conducted in connection with the new, Oklahoma claims.

Plaintiff concedes that XTO's argument that the court cannot transfer an putative class action where there is no named Oklahoma representative is "true in the abstract," but argues that "in practice the case will be consolidated with *Chieftain* which has an Oklahoma class representative." (Dkt. 162, at 8 n. 4). The court ordinarily would not presume to dictate to another court how it should treat newly transferred cases. However, given the clear indication by Judge Seay that the court there was willing to defer to this court's assessment of the merits of the present transfer, the court finds no reason to believe that consolidation would not occur, or than any other procedural defect would prevent transfer.

Roderick argues in the alternative that, even if the court were to deny transfer, the court should permit redefine the class to dismiss without prejudice the Oklahoma claims, which would then allow those claims to be refiled in Oklahoma. At his point, and notwithstanding plaintiff's reliance cases such as *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 633 (D. Kan. 2008), such a result would require plaintiff obtaining formal leave to amend. *Clarke v. Baptist Mem'l Healthcare Corp.*, 264 F.R.D. 375, 381 (W.D. Tenn. 2009); *Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D.

Cal. 2009); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 672 n.3, 680 n.10 (N.D. Ill. 1989). On the other hand, denial of leave to amend "is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West*, 3 F.3d 1357, 1365 (10th Cir.1993). As the court noted at the hearing, the court specifically rejects the suggestion that plaintiff's actions have been made in bad faith. The court finds that the plaintiff has in fact demonstrated that the Oklahoma royalty owners will obtain significant advantages in joining the *Chieftain* action, and finds no other indication that the plaintiff's actions herein are motivated by anything more than the fair but zealous representation of the proposed class.

However, the court need not resolve the issue, as it independently finds that Roderick is entitled to transfer the Oklahoma claims to Oklahoma pursuant to § 1404(a).

The court hereby directs that all claims relating to Oklahoma wells are hereby severed from the remaining claims in this action; the Clerk of the Court shall then transfer the severed claims to the Eastern District of Oklahoma.

The existing Motion to Certify Class is hereby denied without prejudice. The plaintiff shall file its motion for class certification as to the remaining claims on or before July 8, 2001. The defendant shall file its response and expert reports on or before September 1, 2011. The plaintiff shall file any Reply no later than September 30, 2011.

IT IS ACCORDINGLY ORDERED this 1st day of June, 2011, that the plaintiff's Motion to Sever and Transfer or Narrow and Dismiss (Dkt. 157) is hereby granted, as provided herein.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE