# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| WALLACE B. RODERICK REVOCABLE LIVING TRUST, TRUSTEE AMANDA S. RODERICK, on behalf of itself and others similarly situated, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 08-1330-EFM-GEB |
| XTO ENERGY, INC., | ) ) ) | |
| Defendant. | ) ) ) | |
| WALLACE B. RODERICK REVOCABLE LIVING TRUST, TRUSTEE AMANDA S. RODERICK, on behalf of itself and JOHN FITZGERALD, on behalf of himself and others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 12-1215-EFM-GEB |
| OXY USA , INC., | ) ) ) | |
| Defendant. | ) ) ) ) | |

## MEMORANDUM AND ORDER

These cases were consolidated for pretrial purposes on December 30, 2014 (No. 08-1330, ECF No. 323; No. 12-1215, ECF No. 178). The matters are currently before

this Court on: (1) Plaintiff's Motion for Leave to File a Second Amended Complaint (No. 08-1330, ECF No. 349); (2) Plaintiff Class's Motion to Supplement its Second Amended Complaint (No. 12-1215, ECF No. 190), and (3) Plaintiff Class's Motion for Scheduling Conference and Trial Setting (No. 12-1215, ECF No. 213).[1] Defendants oppose all three motions. The Court has had the opportunity to review and thoroughly consider the briefing submitted by all parties. For the reasons set forth below, the motions for leave to amend/supplement the complaints (No. 08-1330, **ECF No. 349**; No. 12-1215, **ECF No. 190**) are **GRANTED** and the motion to set a trial date (No. 12-1215, **ECF No. 213**) is **DENIED.**

## I. Background

Although in both cases the parties set forth complex claims and defenses, for the purposes of amendment, the issues are narrow and the law is well-settled. Greatly simplified, the Plaintiff royalty owners claim that the Defendants underpaid them for gas produced from Kansas wells, in part by deducting from their payments the costs of rendering the gas marketable. The parties agree upon the applicability of the "Marketable Condition Rule" ("MCR"), an outgrowth of the implied duty to market, which broadly provides that the cost of making gas marketable falls solely on the operator-lessee, and not on the royalty owner-lessor.[2] In each case, Plaintiff has generally alleged, among

---

[1] In both cases, the Plaintiff Trust brings this action individually and on behalf of "others similarly situated." In Case No. 12-1215, an additional Plaintiff, John Fitzgerald, joins the case. For purposes of editorial clarity, the Court refers to "Plaintiff" in the singular throughout this opinion.

[2] *Fawcett v. Oil Producers, Inc. of Kansas*, 352 P.3d 1032, 1035 (Kan. 2015) (citing *Sternberger*

other theories, it—and the class it seeks to represent—was underpaid under the MCR, while Defendants argue Plaintiff misinterprets the MCR to its benefit. As one may deduce by the age of these cases, each has a storied history.

### A. Initial Procedural History

#### 1. 2008 Action

The case of *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, was initially filed in the District Court of Kearny County, Kansas. In 2008, the action was removed to the federal court, and Plaintiff was given leave to amend its petition in March 2009 to clarify its claims and comply with D. Kan. Rule 23.1 regarding the format of class action complaints (First Am. Compl., 08-1330, ECF No. 37). Dispositive motions were filed in the spring of 2009, and Plaintiff sought certification of a class of similarly-situated royalty owners in 2010 and 2011 (ECF Nos. 149, 170). Although the court granted Plaintiff's motion to certify, that order was vacated by the Tenth Circuit Court of Appeals in July 2013 (ECF Nos. 201, 217).[3] The Circuit found: 1) the district court relaxed and shifted the burden of proof regarding the commonality requirement; 2) the predominance of common issues was not established; and 3) XTO Energy's previous settlement of natural gas royalty litigation did not estop it from litigating class certification issues, and remanded the case for further proceedings.[4] After remand from the Tenth Circuit, Plaintiff re-filed its motion to certify the class (ECF No. 278) and filed

---

*v. Marathon Oil Co.*, 894 P.2d 788 (Kan. 1995)).
[3] *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213 (10th Cir. 2013).

two motions for partial summary judgment (ECF Nos. 280, 282) in the fall of 2014; all of which remain pending to date.

### 2. 2012 Action

As the 2008 case was being considered by the Tenth Circuit, in June 2012 the Plaintiff Trust and John Fitzgerald filed a case against OXY USA in Kearny County alleging underpayment of royalty claims similar to those in the case against XTO Energy. The state court certified a class of royalty owners prior to removal to federal court. After removal, Plaintiff filed a Class Action Complaint (ECF No. 104) to comply with D. Kan. Rule 23.1 and promptly filed three motions for partial summary judgment (ECF Nos. 105, 106, 107). Plaintiff again amended its complaint to correct an error in its class definition (Second Am. Compl., ECF No. 124) and OXY USA filed a motion to decertify the class (ECF No. 128) in August 2012, contending that a 2011 United States Supreme Court decision reflected a change in law which precludes certification.[5] OXY USA's motion to decertify remains pending.

### 3. Consolidation

Plaintiff filed motions to consolidate the 2008 and 2012 cases (08-1330, ECF No. 226; 12-1215, ECF No. 152) in August 2013, but review of consolidation and OXY USA's motion to decertify was postponed while the court and parties awaited the Tenth

---

[4] *Id*.
[5] OXY USA relied upon *WalMart v. Dukes*, 131 S. Ct. 2541 (2011), in its briefing.

Circuit's decision in *Roderick v. XTO Energy*.[6] After the Tenth Circuit's decision, on December 30, 2014 the cases were consolidated for pretrial purposes. (No. 08-1330, ECF No. 323; No. 12-1215, ECF No. 178.)

On February 25, 2015, with multiple motions regarding class certification and summary judgment pending, the court ordered a stay of the consolidated cases (08-1330, ECF No. 336) while awaiting a ruling in *Fawcett v. Oil Producers Inc. of Kansas*, a Seward County, Kansas case on review by the Kansas Supreme Court. This court determined the *Fawcett* ruling could clarify the law regarding the applicability and scope of the MCR, and any prejudice caused by the delay would be "outweighed by the court's ability to properly adjudicate the pending motions." (08-1330, ECF No. 336.)

### B. *Fawcett*

Because the parties all cite the *Fawcett* matter in support of their positions regarding amendment of the pleadings, a brief review of the case is germane to discussion of the amendment issues. On July 2, 2015, the Kansas Supreme Court issued its opinion in *Fawcett v. Oil Producers, Inc. of Kansas*.[7] In *Fawcett*, like in the *Roderick* matters, the plaintiff class consisted of royalty owners of natural gas wells. The defendant lessee-operator sold raw natural gas to third parties at the wellheads[8] pursuant

---

[6] *Supra* notes 3 and 4 and accompanying text.
[7] *Fawcett*, 352 P.3d at 1034.
[8] "The wellhead sits on top of a natural gas well. After the well has been drilled, the well must be completed. This process includes installation of the wellhead which is equipment at the top of the well that ensures safe operation and manages the flow of natural gas out of the well into the gathering system." http://blog.enerdynamics.com/2012/05/24/natural-gas-wellhead-what-it-does-and-how-it-works/.

to arms-length contracts. Based on various formulas included in the third-party agreements, the costs of processing the gas between the wellhead and the interstate pipeline[9] were calculated into the amount the third party paid the operator. Royalties were then based upon those proceeds received by the operator. The royalty owner class argued the costs subtracted from its royalty payments were the operator's sole responsibility under the MCR because the gas is not in a marketable condition when it leaves the wellhead. The operator argued the royalty payments were proper because they were calculated on its actual proceeds from the sale of the gas at the wellhead. The Seward County, Kansas District Court granted summary judgment to the class, and the Kansas Court of Appeals affirmed the ruling.[10]

The ultimate question before the Kansas Supreme Court was "whether the operator may take into account the deductions and adjustments identified in the third-party purchase agreements when calculating royalties."[11] The royalty owners argued the raw gas was not marketable, for purposes of the MCR, until it enters an interstate pipeline, but the court disagreed. Although it noted "what it means to be 'marketable' remains an open question,"[12] the court found:

> [W]hen a lease provides for royalties based on a share of proceeds from the sale of gas at the well, and the gas is sold at the well, the operator's duty to bear the expense of making the gas marketable does not, *as a matter of law*, extend beyond that geographical point to post-sale expenses. In other

---

[9] "The U.S. natural gas pipeline network is a highly integrated transmission and distribution grid that can transport natural gas to and from nearly any location in the lower 48 States." https://www.eia.gov/pub/oil_gas/natural_gas/analysis_publications/ngpipeline/index.html.

[10] *Fawcett v. Oil Producers, Inc. of Kansas,* 306 P.3d 318 (Kan. App.2013).

[11] *Fawcett*, 352 P.3d at 1034.

[12] *Id.* at 1041.

words, the duty to make gas marketable is satisfied when the operator delivers the gas to the purchaser in a condition acceptable to the purchaser in a *good faith* transaction.[13]

In its ruling, the court injected into its analysis the concept of good faith and fair dealing, stating:

> We are sensitive to the potential for claims of mischief given an operator's unilateral control over production and marketing decisions. But we believe royalty owners' interests are adequately protected by the operator's implied covenant of good faith and fair dealing and the implied duty to market. The latter demands that operators market the gas on reasonable terms as determined by what an experienced operator of ordinary prudence, having due regard for the interests of *both* the lessor and lessee, would do under the same or similar circumstances. In this case, Fawcett does not challenge [the operator's] good faith, its prudence in entering into the purchase agreements at issue, or their material terms. Accordingly, we need not dwell further on what this might entail.[14]

Reversing the lower courts' decisions, the Kansas Supreme Court remanded the case to the district court for further proceedings.[15]

### C. Current Procedural Posture / Rebriefing

Soon after the *Fawcett* ruling was announced, the *Roderick* parties were directed to re-brief their respective class certification and summary judgment motions (No. 08-1330, ECF No. 340; No. 12-1215, ECF No. 181). Along with the rebriefing by all parties,[16] Plaintiff filed the motions that are the subject of this order.

---

[13] *Id.* at 1042 (emphasis added).
[14] *Id.* (internal citations omitted).
[15] *Id.*
[16] The following list includes a majority of currently pending motions, not the subject of this order. **Case No. 08-1330**: Pl.'s 2nd Mot. Certify (ECF No. 351, rebriefing ECF No. 278); Pl.'s two Mots. Partial Summ. J. (ECF No. 353, 355; rebriefing ECF No. 280, 282); Def.'s 2nd Mot. to Stay Cons. of Pl.'s Mots. Partial Summ. J. (ECF No. 364); Def.'s two Mots. Partial Summ. J.

**II.     Motions to Amend (08-1330, ECF No. 349; 12-1215, ECF No. 190)**

As an initial matter, in Case No. 08-1330, Plaintiff seeks to amend its complaint by changing the name of the Trust due to the death of Wallace B. Roderick, and to delete references to Colorado and Oklahoma on claims previously dismissed or transferred (No. 08-1330, ECF No. 349). Defendant XTO Energy does not address the name change or the deletion of the Colorado and Oklahoma references; therefore those portions of the motion are treated as unopposed and **GRANTED**.[17]

Most substantively, in each case Plaintiff moves to either amend its complaint (No. 08-1330, ECF No. 349) or supplement it (No. 12-1215, ECF No. 190) to clarify its claims in light of the *Fawcett* ruling, and specifically to include allegations which reflect the duty of good faith articulated in *Fawcett*. However, both defendants oppose amendment or supplementation of the pleadings, arguing the amendments are untimely and futile in light of the *Fawcett* ruling. The applicable legal standards, the parties' arguments and the Court's rulings are set forth in greater detail below.

**A.     Legal Standards**

1.     <u>Motion to Amend a Pleading</u>

The standard for permitting a party to amend a complaint is well established. A party may amend its pleading as a matter of course under Fed. R. Civ. P. 15(a)(1), either

---

(ECF Nos. 370, 372); Def's two Mots. Strike Expert Decl./Rep. (ECF Nos. 374, 376). **Case No. 12-1215**: Pl.'s Mots. Partial Summ. J. (ECF Nos. 192, 194, 196, rebriefing ECF Nos. 105, 106, 107); Def.'s Mot. Decertify (ECF No. 189, rebriefing ECF No. 128).

[17] Pursuant to D. Kan. Rule 7.4, if no response in opposition is filed, a motion is considered to be uncontested and may be granted without further notice.

before the responding party answers or within 21 days after service of the responsive pleading. However, in cases such as this, where the time to amend as a matter of course has passed, without an opposing party's consent, a party may amend his pleading only by leave of the court under Fed. R. Civ. P. 15(a)(2).[18] The decision to allow an amendment is within the sound discretion of the court,[19] and Rule 15(a)(2) directs the court to "freely give leave when justice so requires."[20]

When exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[21] The court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.[22]

2. Motion to Supplement a Pleading

Federal Rule of Civil Procedure 15(d) governs a motion to supplement. This rule allows the court to, "on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to

---

[18] Fed. R. Civ. P. 15(a).
[19] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).
[20] *Brown v. Alma, Inc.*, No. 06-2548-JAR, 2007 WL 4553330, at *3 (D. Kan. Dec. 18, 2007) *aff'd,* 309 F. App'x 238 (10th Cir. 2009) (citing *Duncan v. Manager, Dept. of Safety, City & County of Denver,* 397 F.3d 1300, 1315 (10th Cir. 2005)).
[21] *Hinkle v. Mid-Continent Cas. Co.*, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Industries*, 127 F.R.D. 206, 209 (D. Kan. 1989)).
[22] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc.*, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013) report and recommendation adopted, 2013 WL 328986 (D. Kan. Jan.

be supplemented." The court has broad discretion to approve supplementation, and "authorization should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants."[23] Essentially, the "standard for exercising discretion on a motion to supplement is the same as that for disposing of a motion to amend under Rule 15(a),"[24] and the court considers the same factors, such as undue delay, bad faith or dilatory motive, undue prejudice, and futility.[25] The broad discretion allows the court to foster the ultimate purpose of Rule 15(d), which "is to promote as complete an adjudication of the dispute between the parties as is possible"[26] by ensuring the parties' disputes are contained "within a single comprehensive pleading."[27]

B. Analysis

All parties spend a considerable amount of energy discussing the class certification and dispositive issues present in each case, focusing on the effect the *Fawcett* ruling may have on those disputes. Despite the complexity of those matters, the parties' arguments boil down to those commonly found in motions to amend or

---

29, 2013).
[23] *Garcia v. Tyson Foods, Inc.*, No. 06-2198-JWL-DJW, 2010 WL 4102299, at *2 (D. Kan. Oct. 18, 2010).
[24] *Id*. (citing *First Savings Bank, F.S.B. v. U.S. Bancorp,* 184 F.R.D. 363, 368 (D.Kan.1998); *Southwest Nurseries, LLC v. Florists Mut. Ins., Inc.,* 266 F.Supp.2d 1253, 1256 (D.Colo.2003)). *See also Micron Technology, Inc. v. Rambus Inc*., 409 F.Supp.2d 552 (D. Del. 2006) ("the standard under the rule governing motions for leave to file a supplemental pleading is essentially the same as that under the rule governing motions for leave to amend, and leave to supplement should be granted unless it causes undue delay or undue prejudice.").
[25] *Garcia*, 2010 WL 4102299, at *2 (internal citations omitted).
[26] *Id*. (citing *First Savings,* 184 F.R.D. at 368).
[27] *Id*. (citing *First Savings,* 184 F.R.D. at 368; *Rezaq v. Nalley,* No. 07–cv–02483–LTB–KLM, 2010 WL 965522, at *3 (D.Colo. Mar.15, 2010)).

supplement: timeliness/delay, futility, and prejudice to the defendants.

Defendant OXY USA argues Plaintiff's motion in No. 12-1215 should be construed as a motion to amend, rather than a motion to supplement. Because the standards for evaluation of amendment or supplementation are the same, the Court construes both motions as motions to amend the respective complaints. The factors addressed by the parties are examined below.

1. Timeliness/Delay

Both defendants contend *Fawcett* did not actually introduce the concept of a good faith sale into the marketability determination, because the duty of good faith and fair dealing is implied in every contract and the implied duty to market has long incorporated its own good faith element. Therefore, Defendants argue it is misleading to suggest this is a "new" claim, and Plaintiff should have included allegations regarding good faith from the inception of each case. Because Plaintiff did not, Defendants argue, the proposed amendment is untimely.

Plaintiff asks the Court to look at a larger picture: even with the proposed amendment, the case is still a breach of lease case regarding Defendants' underpayments of royalties. It contends the issue of "good faith sales," as a factor of analysis, was not raised by the parties in *Fawcett* or emphasized in prior royalty underpayment class actions in Kansas.[28] Plaintiff further asserts, because *Fawcett* was the first royalty

---

[28] *See* No. 08-1330, Pl.'s Mot., ECF No. 394 at 7, n.9 (noting the three MCR cases discussed in *Fawcett* did not address the issue of good faith sale) (internal citations omitted).

underpayment decision to specifically analyze good faith in the context of the MCR, the novelty of the analysis justifies Plaintiff's delay including allegations in its complaint which are specific to that issue.

Although the Court acknowledges Defendants' frustration with the lack of advancement in the case, the delay is, in part, a result of the considerable and ongoing motion practice thus far. Neither defendant points to a missed pleading deadline nor past discovery deadline to assert that amendment would be untimely on its face. Although Defendants cite case law supporting their contention that <u>unexplained</u> delay, alone, justifies denial of amendment,[29] the Court does not consider Plaintiff's delay so inexplicable as to deny amendment on that basis.[30] Neither does the Court consider Plaintiff's claims are brought for a dilatory motive, or in an effort to create a "moving target" of the pleadings. While the concept of good faith is clearly not new, the Kansas Supreme Court's <u>focus</u> on the concept, and suggested analysis of those factors which could demonstrate good faith, does appear novel. Therefore, the Court does not find Plaintiff's delay to be undue, or unexplained.[31]

---

[29] *See* No. 08-1330, Def.'s Mem. Opp., ECF no. 366 at 13 (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357 (10th Cir. 1993) ("It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend."); *Koch*, 127 F.R.D. at 210 ("It is within the court's discretion to deny leave to amend for untimeliness or undue delay without a showing of prejudice to the other party.").

[30] *Minter*, 451 F.3d at 1206 ("[D]enial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'") *(citing Frank*, 3 F.3d at 1365–66).

[31] *See Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991) (upholding the district court's denial of leave to amend, in part because the plaintiff "offered no explanation for the delay", which was a "factor supporting a denial of leave to amend.").

2. <u>Futility</u>

Both Defendants argue the *Fawcett* ruling clearly rejected Plaintiff's entire theory of recovery under the MCR, because Plaintiff's claim thus far has been that the gas was not marketable (and Defendants bore full responsibility for making it so) until it reached interstate pipeline quality—very similar to the *Fawcett* plaintiffs' claims. Therefore, Defendants argue Plaintiff's proposed amendment is futile and should be denied. However, the Court believes this to be an oversimplification of the *Fawcett* ruling, which found the definition of marketability, while not necessarily defined by the interstate pipeline quality, could not be decided <u>as a matter of law</u>—reversing the lower court's entry of summary judgment and remanding the case to the district court for additional findings.

But how the *Fawcett* ruling may ultimately affect the dispositive motions in this case is a topic for another day. The parties' thorough attempts to argue the merits of their cases in the context of the motions to amend raise practical issues. As previously highlighted, there are numerous dispositive motions pending before the District Judge. For this reason, the Court cannot opine on the dispositive issues in the context of this motion. Most notably, although the parties cannot agree on <u>how</u> *Fawcett* may affect the proof ultimately required for the claims and defenses in each case, they nevertheless agree that it <u>does</u> affect the outcome. Therefore, the Court cannot find the amendments, based largely on *Fawcett*, to be futile.

### 3. Prejudice

"Absent flagrant abuse, bad faith, futility of amendment, or truly inordinate and unexplained delay, prejudice to the opposing party is the key factor in deciding a motion to amend."[32] Amendment of the pleadings "invariably causes some 'practical prejudice,'"[33] but the court typically finds prejudice only if the amendment would "unfairly affect a party's ability to prosecute or defend the lawsuit."[34] The burden of demonstrating prejudice justifying denial of amendment lies with the party opposing amendment.[35]

Plaintiff outlines, in both motions, the additional discovery it believes may be necessary to analyze the factors relevant to good faith sale. It contends the royalty owners do not possess any information about those factors, so any necessary discovery should be of a minimal nature.

Notably, defendant XTO Energy does not address the issue of prejudice—or the prospect of having to engage in additional discovery if amendment is granted—in its response; therefore any claim by XTO Energy that it would be prejudiced is waived. Defendant OXY USA maintains it would be required to defend almost an entirely new case as a result of Plaintiff's amended complaint, and disputes Plaintiff's claim that little additional discovery would be necessary to support the good faith analysis. It argues the

---

[32] *Hull v. Viega, Inc.*, No. 12-2086-JAR-TJJ, 2014 WL 896621, at *7 (D. Kan. Mar. 6, 2014) (quoting *Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202,* 453 F.Supp.2d 1295, 1307 (D. Kan. 2006)).
[33] *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989) (citing *Patton v. Guyer,* 443 F.2d 79, 86 (10th Cir.1971)).
[34] *Hull,* 2014 WL 896621, at *7 (citing *Minter,* 451 F.3d at 1207).

class depositions have been completed based on Plaintiff's previous pleading, and some witnesses previously deposed could have fading memories.

But these consolidated cases remain in the class certification stage, with no Scheduling Order—and no discovery deadline—currently governing the cases as a result of the ongoing motion practice. However unfortunate the procedural posture and age of the cases might be, Plaintiff's proposed amendments do not introduce an "entirely new and different claim" [36] or "substantially different issue;"[37] rather, they introduce another component of the same breach of contract claim. Therefore, the Court fails to find "grave prejudice"[38] arising from the proposed amendment which would prevent Defendants from zealously pursuing their defenses.

### C. Conclusion

The Kansas Supreme Court's ruling in *Fawcett*, and this court's prior stay intuiting that the ruling would affect the outcome of these cases, persuades this Court that amendment of Plaintiff's complaint is neither a result of unexplained delay nor bad faith on the part of Plaintiff. Likewise, defendant XTO Energy waived any argument regarding prejudice, and the procedural posture of the consolidated cases leads the Court

---

[35] *Koch*, 127 F.R.D. at 210.
[36] *Hom v. Squire,* 81 F.3d 969, 973 (10th Cir.1996) (finding the district court did not err by denying a motion "to add an entirely new and different claim to [the plaintiff's] suit little more than two months before trial").
[37] *R.E.B., Inc. v. Ralston Purina Co.,* 525 F.2d 749, 752 (10th Cir.1975) (finding although the amendment occurred five and one-half weeks before trial, defendant was not prejudiced when "[t]he amendments did not propose substantially different issues").
[38] *Id.* at 751-52 ("Lateness does not of itself justify the denial of the amendment…. Unless the granting of the amendment after remand caused grave prejudice, the action is not an abuse of

to find defendant OXY USA has not met its burden to demonstrate prejudice. In light of the factors discussed above, the Court exercises its considerable discretion to fully adjudicate this case on its merits, in as complete a fashion as possible, rather than constrain the Plaintiff's theories. In the interests of justice, Plaintiff's request to amend will be **GRANTED**. Plaintiff is strongly cautioned future amendments, although not outright prohibited, will be met with considerable scrutiny[39] given the previous opportunities to articulate its claims.

### III. Plaintiff's Motion for an Order Setting a Trial Date (No. 12-1215, ECF No. 213)

Plaintiff in Case No. 12-1215-EFM asks the Court for a scheduling order and trial setting to propel this case toward trial. Plaintiff argues the ruling in *Fawcett* clarified the factual showing necessary to prove their case, and the parties completed re-briefing of their pending motions; therefore, the case is now ripe for scheduling. Plaintiff asserts little discovery remains to be completed.

However, Defendant OXY USA sees the situation quite differently. It contends the motions currently pending will significantly affect the course of the case, and Plaintiff's motion is an improper attempt to pressure the Court to rule on those motions. Furthermore, OXY USA asserts if Plaintiff is allowed to amend its claims, a greater amount of fact and expert discovery remain and trial is not imminent.

---

discretion.")
[39] *See Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Castleglen, Inc. v. Resolution Trust Corp.,* 984 F.2d 1571, 1585 (10th Cir.1993); *Foman,* 371 U.S. at 182) (noting

The Court finds that establishing a trial date is premature at this juncture, given the multiple pending motions regarding class certification and summary judgment. And although the Court agrees a scheduling conference would materially assist in planning discovery on dispositive and class certification issues now that amended complaints will be filed, a telephone status conference has already been scheduled for March 9, 2016 at 2:30 p.m. before District Judge Eric F. Melgren (No. 08-1330, ECF No. 408; No. 12-1215, ECF No. 217). Therefore, the issue of scheduling with the undersigned Magistrate Judge will be postponed until after that conference.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to File a Second Amended Complaint (No. 08-1330, **ECF No. 349**) and Plaintiff's Motion for Leave to Supplement its Second Amended Complaint (No. 12-1215, **ECF No. 190**) are **GRANTED.** Plaintiff shall file the amended pleadings in the respective cases within ten days of this order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for an Order Setting a Trial Date (No. 12-1215, **ECF No. 213**) is **DENIED**. The undersigned Magistrate Judge will issue any necessary scheduling orders following the March 9, 2016 conference.

---

"failure to cure deficiencies by amendments previously allowed" is one reason the court may use

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 24th day of February, 2016.

                                          _s/ Gwynne E. Birzer_____
                                          GWYNNE E. BIRZER
                                          United States Magistrate Judge

---

to deny leave to amend).